# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Jane Doe, | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Dale A. Peterson, Connie M. Peterson, and Dale's On Lake Of The Woods, LLC, | **(JURY TRIAL DEMANDED)** |
| Defendants. | |

Plaintiff Jane Doe, for her Complaint against Dale A. Peterson, Connie M. Peterson, and Dale's On Lake Of The Woods, LLC, states and alleges as follows:

## INTRODUCTORY STATEMENT

1. This case arises from sexual assault suffered by Plaintiff at the hands of Defendant Dale Peterson. In 2019, the Defendants engaged Plaintiff to work for them at their recreational business on Lake of the Woods. Throughout her time working for the Defendants, Plaintiff was forced to contend with worsening sexually inappropriate behavior exhibited by Dale. This culminated in a violent late-night attack by Dale in February 2020, when Dale imprisoned and raped Plaintiff by forcibly penetrating her with his fingers.

2. Defendant Dale Peterson is liable to Plaintiff for this attack and must answer for his actions. Dale's spouse and limited liability company are liable to Plaintiff for negligently exposing Plaintiff to Dale's actions and the harm caused to her. All three

Defendants are liable to Plaintiff under wage and hour claims brought under state and federal law arising from their misclassification of Plaintiff as a "volunteer" and paying her less than minimum wage for her work.

3.     All three Defendants are likewise liable to Plaintiff because they discriminated against her on the basis of her sex and/or age when they subjected her to unwelcome, pervasive, and offensive sexual harassment throughout her employment. Plaintiff resigned due to Defendants' sexual harassment.

## PARTIES

4.     Plaintiff Jane Doe ("**Plaintiff**") is an individual residing in the State of Idaho.

5.     Defendant Dale A. Peterson ("**Dale**")[1] is a resident of Lake of the Woods County, Minnesota.

6.     Defendant Connie M. Peterson ("**Connie**") is a resident of Lake of the Woods County, Minnesota.

7.     Dale's On Lake Of The Woods, LLC, f/k/a Dale's Fish House Rental – Lake of the Woods, LLC, is a Minnesota limited liability company with its principal place of business in Lake of the Woods County, Minnesota.

---

[1] Due to the presence of two Defendants sharing the same last name, first names are used throughout this Complaint to refer to each Defendant.

## JURISDICTION & VENUE

8.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.     This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. There exists complete diversity of citizenship in this matter and the amount in controversy exceeds $75,000.00.

10.     This matter should be heard in the Sixth Division of the District of Minnesota because this matter arises from Lake of the Woods County, Minnesota, which is within the Sixth Division of this district.

## FACTS

11.     Plaintiff hereby incorporates all preceding allegations as though fully set forth herein.

### *Background*

12.     At all relevant times, Dale and Connie owned and operated a business on Lake of the Woods providing camping, fishing, and other recreational activities for patrons.

13.     Plaintiff first met Defendants in August of 2019.

14.     In the summer of 2019, Plaintiff was interested in residing on or near Lake of the Woods. The Defendants offered Plaintiff an arrangement by which Plaintiff would reside at the Defendants' business premises and would perform work at the Defendants' direction. This work included assigned job duties of cleaning the fish house, cleaning and maintaining the showers, picking up rocks, and other tasks as required and assigned by the

3

Defendants. In exchange, Plaintiff was allowed to reside in one of the Defendants' ice houses, and was given a credit for her work toward the rental value of the ice house. Plaintiff began working for Defendants in August of 2019.

15.     At all relevant times, the Defendants improperly classified Plaintiff as a "volunteer," yet required her to work as directed under the Defendants' supervision and control. Moreover, the Defendants purported to compensate Plaintiff for her time and hours worked through a "credit" applied to offset the value of the ice house and camper residences provided to her by the Defendants. This arrangement violated state and federal law because it resulted in Plaintiff receiving compensation below the state and federal minimum wage.

### *Plaintiff's Life On The Lake*

16.     For a brief moment in the summer of 2019, Plaintiff experienced the life she had always dreamed of living. Plaintiff had a deep personal connection with the Lake of the Woods area and was excited to live on the lake. Plaintiff spent time with close friends, baked, went on golf cart rides, and was finally able to enjoy lake life with her closest companion, a small dog named Greta.

17.     In addition to working for the Defendants, Plaintiff spent some nights and weekends earning additional income for herself by working as a hostess at a large and popular lodge and restaurant next to the Defendants' property.

18.     Unfortunately, Plaintiff's momentary bliss was marred by the beginnings of harassment and unsettling behavior toward Plaintiff by Dale.

19.     As Plaintiff was doing the work assigned to her by the Defendants, Dale began to make unwelcome advances toward her. For example, Dale asked Plaintiff if he could "have a hug" on several occasions and made sexual references and gestures toward her. Plaintiff repeatedly asked that Dale stop behaving this way toward her, but the harassment continued over the course of the summer.

20.     Plaintiff cherished her life on the lake, with her friends and her little dog. Despite Dale's unacceptable behavior, which became progressively more and more physical and threatening, Plaintiff tried her best to tolerate it so that she could live what otherwise would have been her dream lifestyle.

21.     At the end of the 2019 summer season, the Defendants asked Plaintiff to come back in December when they anticipated more customers for the ice fishing season. The Defendants promised that, although they would need to use Plaintiff's makeshift ice house residence for customers over the winter, Plaintiff could live in a camper owned by one of the Defendants' relatives. The Defendants promised that the camper would be positioned in the same spot—down by the lakeshore that Plaintiff loved so much.

22.     Plaintiff agreed to return in December, believing that Dale was at times frightening, but ultimately harmless. This tragic error and underestimation for Dale's depravity would haunt her forever.

### *Continued Harassment & Plaintiff's Resignation*

23.     In December 2019, Plaintiff returned to the Defendants' business. Once she arrived, she discovered that the Defendants had made a significant change to the plan by positioning Plaintiff's camper residence away from the lakeshore. Rather, the Defendants

placed the camper next to the Defendants' shop. Notably, in this location the camper was surveilled by the Defendants' security camera system at all times. When Plaintiff raised this concern with the Defendants, they told her that it would be "easier to keep an eye" on her.

24.     As time went on, Dale grew more brazen in his harassment of Plaintiff. He continued demanding "hugs" from Plaintiff. By characterizing these forced embraces as mere "hugs," Dale attempted to mask the true character of the unwanted contact and characterize it instead as friendly or playful innocuous touching. Once he had Plaintiff in his forced embrace, he purposefully started breathing down her neck. He would ask her for "kisses" and continued to make sexual remarks to Plaintiff routinely. Every day the harassment seemed to get worse.

25.     Once, when Plaintiff was showering in the locked on-site shower room, she heard the door unlock from the outside, and Dale entered. Though Plaintiff was frightened and vulnerable, she was able to persuade Dale to leave her alone.

26.     After the shower incident and the invasion of privacy, Plaintiff resigned her position effective February 2020. She intended to simply pay rent to the Defendants for her use of the camper and stop working for them so that she would no longer be in constant contact with Dale.

27.     Once Plaintiff resigned her position, Dale escalated his efforts. Dale's trips to the shower room when Plaintiff was there became a daily occurrence. On February 9, 2020, Plaintiff had just finished showering when Dale drove up to the shower building in a "Bombardier" snow machine. Dale took Plaintiff's dog, and told Plaintiff that unless she

got in the vehicle with him, she would "never see her again." Plaintiff had no choice but to comply. Once in the vehicle, Dale started driving out to the frozen lake, telling Plaintiff that he was going to "show her a new sleeper," referring to an ice house with a bed inside.

28.     Luckily, Dale's plan was interrupted by a group of ice fishermen that were leaving the lake in a pickup truck. Likely realizing that those people would be witnesses, Dale abandoned whatever plan he had for Plaintiff and returned her and her dog to shore.

### *Dale's Attack On Plaintiff*

29.     On the night of February 9, 2020, Plaintiff worked a shift in the bar and restaurant at the neighboring resort. Dale arrived and became intoxicated. Dale sat next to Plaintiff on a stool and poked her, took her reservation book, grabbed her butt, and repeatedly asked Plaintiff to "give [him] a kiss." Eventually, Dale left the bar and Plaintiff believed she was safe.

30.     At closing time, Plaintiff went back to her camper at the Defendants' property. It was approximately 10:45 p.m. on February 9, 2020. Plaintiff walked up to her camper door, and opened it, inadvertently allowing her little dog to escape without a leash.

31.     Plaintiff chased down her dog in the dark and carried it back to the camper door. As she opened the door, Dale appeared behind her. He pushed her into the camper and came in after her, slamming shut the door behind him.

32.     Plaintiff questioned why Dale was there, and he immediately shoved Plaintiff down on a small couch.  Dale aggressively began to grope her. Plaintiff told Dale he had to leave, but Dale simply stated he would not go. He advanced on Plaintiff, pushing her

down and forcefully removing her jacket. He hastily unbuttoned Plaintiff's shirt and pulled her bra up, exposing her breasts.

33.    Plaintiff's dog barked and jumped at Dale, but Dale kicked and threw the little dog away from him.

34.    Dale held Plaintiff down as she struggled. He licked and sucked on her face, ear, breasts, and exposed upper body as she fought.

35.    Plaintiff attempted to stay calm and began trying to talk Dale down. She pleaded with him, stating that he "has to stop this." As he groped her body and held her down, Dale told her that he hadn't had sex with his wife in years. Dale also stated, "It's me and you. No one else is around. No one can see or hear us." When Plaintiff warned Dale that his violent entry into her camper would be recorded on the Defendants' CCTV system, Dale told Plaintiff that he had moved the cameras before his attack.

36.    Dale held Plaintiff down as he opened her pants and pulled them down. He penetrated Plaintiff's vagina with his fingers, and told her that he could "feel" that she enjoyed it.

37.    Plaintiff was in survival mode. She knew that Dale was drunk and, in that moment, that he could have killed her. She kept talking to Dale, trying to convince him to stop the attack. At one point, it almost looked as though she had succeeded; Dale stood up and Plaintiff was able to pull up her pants. He went over to the door and opened it, then hesitated. He slammed the door shut and said "no, this is happening." He picked up Plaintiff and forced her onto her bed. He pulled down her pants and underwear again. He pulled his pants down to his knees, and began to stumble or lose his balance.

38.     Plaintiff saw her last opportunity to stop the attack. She kicked Dale in his groin with all the strength she had left. He recoiled in pain, and Plaintiff was able to push him out the door of the camper. She shut and locked the door behind him.

39.     Dale shouted at her from outside that she would not be able to keep him out. He threatened that if Plaintiff left the camper, he would kill her. He taunted her as he stalked the outside of the camper, saying that "it's a long way to Bemidji" and that there would be "nobody on that road." Dale spent approximately 45 minutes outside of Plaintiff's camper, making threats and ensuring that Plaintiff remained trapped inside.

### *Plaintiff's Escape & The Restraining Order*

40.     At approximately 8:30 a.m. or 9:00 a.m. on the morning of February 10, 2020, as the sun was just coming up, Plaintiff saw an opportunity to escape the Defendants' property. She heard a truck park nearby, and knew it was a propane delivery. She heard Dale go over and talk to the delivery person, and she saw her chance.

41.     Plaintiff collected her dog, her purse, and her phone, and left the camper. She ran to her car and put her keys in. She started the car and backed out as fast as she could. She drove out of the Defendants' property as fast as she could. Dale saw her and tried to wave her down, but Plaintiff kept going.

42.     Plaintiff was terrified that Dale would come after her or might go to her home in Bemidji to try to find her. Plaintiff drove straight to a friend's house in Grygla instead. Once safely there, she began researching sexual assault survivor services and left for the hospital. She then traveled to Bemidji and went straight to survivor services.

43.     Survivor services helped Plaintiff submit a petition for a restraining order to the appropriate court. The order was granted that same day. *See* Court File No. 04-CV-20-494.

44.     Since the sexual assault and rape suffered by Plaintiff at the hands of Dale, Plaintiff has undergone therapy and continues to suffer from the trauma.

## COUNT ONE
## SEXUAL ABUSE / NEGLIGENCE
## (DALE A. PETERSON)

45.     Plaintiff hereby incorporates all preceding allegations as though fully set forth herein.

46.     Dale had a duty to avoid doing harm to Plaintiff, and Defendant breached that duty by either intentionally or unintentionally causing harm to Plaintiff.

47.     Dale's conduct constitutes violations of 18 U.S.C. Chapter 109A and Minnesota Statutes Chapters 541 and 609, including without limitation 18 U.S.C. §§ 2241 & 2242, and Minn. Stat. §§ 609.342 through 609.3451, and therefore constitutes negligence per se.

48.     As a direct and proximate result of Dale's actions and negligence, Plaintiff suffered damages in an amount in excess of $75,000.00.

## COUNT TWO
## NEGLIGENCE
## (ALL DEFENDANTS)

49.     Plaintiff hereby incorporates all preceding allegations as though fully set forth herein.

50.     Connie and Dale's On Lake Of The Woods, LLC each had a duty to protect Plaintiff from reasonably foreseeable harm at their place of business.

51.     Connie and Dale's On Lake Of The Woods, LLC each had notice of Dale's vicious or dangerous propensities by some act, threat, or other occurrence.

52.     Each Defendant had adequate opportunity to protect Plaintiff from said foreseeable harm, but each failed to take reasonable steps to do so, resulting in foreseeable harm to Plaintiff.

53.     As a direct and proximate result of the Defendants' actions and negligence, Plaintiff suffered damages in an amount in excess of $75,000.00.

## COUNT THREE
### BATTERY
### (DALE A. PETERSON)

54.     Plaintiff hereby incorporates all preceding allegations as though fully set forth herein.

55.     In sexually assaulting Plaintiff, Dale committed intentional, unpermitted, offensive contact with Plaintiff.

56.     As a direct and proximate result of this unpermitted contact, Plaintiff has suffered damages in an amount in excess of $75,000.00.

## COUNT FOUR
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (DALE A. PETERSON)

57.     Plaintiff hereby incorporates all preceding allegations as though fully set forth herein.

58.     Dale's conduct, as alleged, constitutes intentional or reckless conduct which was both extreme and outrageous.

59.     As a direct and proximate result of this unpermitted contact, Plaintiff has suffered damages in an amount in excess of $75,000.00.

## COUNT FIVE
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (DALE A. PETERSON)

60.     Plaintiff hereby incorporates all preceding allegations as though fully set forth herein.

61.     Dale's sexual assault of Plaintiff constituted a direct invasion of Plaintiff's rights and was willful, wanton, or malicious conduct.

62.     Plaintiff reasonably feared for her own safety in her own home during and following the sexual assault.

63.     As a direct and proximate result of Dale's conduct, Plaintiff has suffered severe emotional distress and resultant physical injury, and has suffered damages in an amount in excess of $75,000.00.

## COUNT SIX
## INTRUSION UPON SECLUSION
### (DALE A. PETERSON)

64.     Plaintiff hereby incorporates all preceding allegations as though fully set forth herein.

65.     Dale intentionally intruded upon Plaintiff's solitude, seclusion, private affairs, and concerns.

66.     Dale's intrusion was highly offensive.

67.     Dale's intrusion upon Plaintiff's seclusion was the direct and proximate cause of damages to Plaintiff in an amount in excess of $75,000.00.

**COUNT SEVEN**
**UNPAID WAGES**
**FAIR LABOR STANDARDS ACT – 29 U.S.C. § 201 *et seq.***
**(ALL DEFENDANTS)**

68.     Plaintiff hereby incorporates all preceding allegations as though fully set forth herein.

69.     The Fair Labor Standards Act (FLSA) requires employers to pay non-exempt employees at a minimum rate not less than $7.25 per hour.

70.     Plaintiff was an employee of Defendants within the meaning of the FLSA at all relevant times.

71.     Defendants were employers of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

72.     As a result of the misclassification of Plaintiff as a volunteer or other failure to pay Plaintiff as required by law, Defendants violated the FLSA, 29 U.S.C. §§ 206 & 215(a)(2).

73.     Defendants knew, or showed reckless disregard for the fact, that Plaintiff was not paid proper compensation in violation of the FLSA.

74.     Plaintiff is entitled to recover liquidated damages in an amount equal to unpaid wages, and her attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

**COUNT EIGHT**
**UNPAID WAGES**
**MN FAIR LABOR STANDARDS ACT – MINN. STAT. § 177.21 *et seq.***
**(ALL DEFENDANTS)**

75.     Plaintiff hereby incorporates all preceding allegations as though fully set forth herein.

76.     Plaintiff was an employee of Defendants and Defendants were Plaintiff's employers. *See* Minn. Stat. §§ 177.23, 177.24, & 181.171, subd. 4.

77.     The Minnesota Fair Labor Standards Act (MFLSA), Minn. Stat. § 177.21, requires employers to pay non-exempt employees minimum wage as prescribed by law.

78.     Defendants suffered and permitted Plaintiff to work without proper compensation as required by the MFLSA.

79.     Defendants knew or showed reckless disregard for the fact that they failed to pay proper compensation, constituting a willful violation of the MFLSA.

80.     Defendants' failure to comply with the MFLSA caused Plaintiff to suffer loss of wages and interest thereon.

81.     Plaintiff is entitled to the reasonable value of her work, liquidated damages, and attorneys' fees and costs under the MFLSA.

**COUNT NINE**
**FAILURE TO PAY WAGES PROMPTLY**
**MINN. STAT. § 181.101 & 181.13**
**(ALL DEFENDANTS)**

82.     Plaintiff hereby incorporates all preceding allegations as though fully set forth herein.

83.    Plaintiff was Defendants' employee and Defendants were her employer. *See* Minn. Stat. §§ 181.13 & 181.171, subd. 4.

84.    Minnesota law requires the prompt payment of earned and unpaid wages and provides for a penalty for failure to make such payment. *See* Minn. Stat. §§ 181.13 & 181.101.

85.    Defendants' refusal to pay Plaintiff is a violation of those laws.

86.    As a direct result of Defendants' unlawful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT TEN**
**DISCRIMINATION**
**TITLE VII – 42 U.S.C. § 2000e-2**
**(ALL DEFENDANTS)**

87.    Plaintiff hereby incorporates all preceding allegations as though fully set forth herein.

88.    Title VII prohibits discrimination on the basis of sex.

89.    Plaintiff was Defendants' employee and Defendants were her employer.

90.    Plaintiff was at all times a member of a protected class under Title VII.

91.    Plaintiff at all times met the requirements and expectations of her role as an employee of Defendants.

92.    Defendants sexually harassed Plaintiff and created a work environment, through action or inaction, which rendered Plaintiff's working conditions so intolerable that she was forced to terminate her employment.

93.    Defendants discriminated against Plaintiff and treated her differently than similarly situated employees on the basis of her sex.

94.    As a direct result of Defendants' unlawful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT ELEVEN**
**DISCRIMINATION**
**MINNESOTA HUMAN RIGHTS ACT – MINN. STAT. § 363A.01** *et seq.*
**(ALL DEFENDANTS)**

95.    Plaintiff hereby incorporates all preceding allegations as though fully set forth herein.

96.    The Minnesota Human Rights Act (MHRA) prohibits discrimination on the basis of sex.

97.    Plaintiff was Defendants' employee and Defendants were her employer.

98.    Plaintiff was at all times a member of a protected class under the MHRA.

99.    Plaintiff at all times met the requirements and expectations of her role as an employee of Defendants.

100.    Defendants sexually harassed Plaintiff and created a work environment, through action or inaction, which rendered Plaintiff's working conditions so intolerable that she was forced to terminate her employment.

101.    Defendants discriminated against Plaintiff and treated her differently than similarly situated employees on the basis of her sex.

102.    As a direct result of Defendants' unlawful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

16

**COUNT TWELVE**
**CIVIL CONSPIRACY**
**(ALL DEFENDANTS)**

103.    Plaintiff hereby incorporates all preceding allegations as though fully set forth herein.

104.    Dale and Connie, together and through their company, Dale's On Lake Of The Woods, LLC, worked together and conspired, whether lawfully or not, to accomplish an unlawful purpose. Specifically, each Defendant conspired with the other to ensure that Plaintiff was present on their property and vulnerable to Dale's efforts to sexually assault her.

105.    The Defendants also conspired to solicit and hire Plaintiff to work for them as a "volunteer," knowing that this arrangement violated state and federal law.

106.    As a result of the conspiracy, each Defendant hereto is jointly and severally liable for all damages to Plaintiff caused by the others, in an amount in excess of $75,000.00.

**COUNT THIRTEEN**
**JOINT VENTURE / JOINT ENTERPRISE**
**(ALL DEFENDANTS)**

107.    Plaintiff hereby incorporates all preceding allegations as though fully set forth herein.

108.    The Defendants contributed money, property, time, and skill in a common undertaking and had a mutual understanding for a common purpose.

109.    The Defendants shared joint proprietorship and mutual control over their joint venture or joint enterprise.

17

110.    The Defendants shared profits generated from their operation of the joint venture or joint enterprise, either by express or implied agreement.

111.    As a result of the joint venture or joint enterprise between the Defendants, each Defendant hereto is jointly and severally liable for all damages to Plaintiff caused by the others, in an amount in excess of $75,000.00.

**WHEREFORE,** Plaintiff respectfully requests judgment be entered in her favor and against the Defendants as follows:

1.    Judgement for Plaintiff and against Dale A. Peterson in an amount in excess of $75,000.00.

2.    Judgment for Plaintiff and against all Defendants, jointly and severally, in an amount in excess of $75,000.00.

3.    Judgment for Plaintiff and against all Defendants, jointly and severally, for all wages due and owing to her by law, in an amount to be determined at trial.

4.    Judgment for Plaintiff and against all Defendants, jointly and severally, for liquidated damages in an amount equal to all wages due and owing to her by law.

5.    Judgment for Plaintiff and against all Defendants for pre- and post-judgment interest.

6.    An award of Plaintiff's reasonable attorneys' fees and costs.

7.    Such other and further relief as the Court deems just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and applicable federal and local rules, Plaintiff hereby demands a trial by jury.


PEMBERTON LAW, P.L.L.P.

Date:  November 23, 2022          By  /s/Ryan D. Fullerton
                                  Kendra E. Olson, MN No. 0397617
                                  Ryan D. Fullerton, MN No. 0398363
                                  110 North Mill Street
                                  Fergus Falls, MN 56537
                                  Telephone: 218-736-5493
                                  E-mail: r.fullerton@pemlaw.com
                                  **ATTORNEYS FOR PLAINTIFF**

RDF:cg:sb
2022-4331